# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

JANE WEAVER,            )
                    )
     Plaintiff,       )
                    )
     v.                )
                    )     **Civil Action No. 00-01099 (RCL)**
ROBERT BRATT, <u>et al</u>.,   )
                    )
                    )
     Defendants.    )
_____)

## <u>MEMORANDUM OPINION</u>

This matter comes before this Court on three separate motions: (1) Federal Defendants' Motion [25] to Dismiss, or in the Alternative, for Summary Judgment; (2) Defendant Kator's Motion [20] to Dismiss; and (3) Federal Defendants' Motion [23] to Unseal.  There are also four ancillary motions: (1) Federal Defendants' Motion [38] for Further Enlargement of Time; (2) Federal Defendants' Motion [41] to Strike; (3) Federal Defendants' Motion [40] for Enlargement of Time;  and (4) Plaintiff's Motion [43] Concerning Electronic Evidence and Docket Access. Plaintiff Jane Weaver filed a four-count complaint on May 16, 2000, in which she claimed violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Federal Tort Claims Act ("FTCA"), and asserted two claims pursuant to the Supreme Court's holding in <u>Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971), against a long list of federal employee defendants.  In addition, the plaintiff alleged legal malpractice against her former attorney, Michael Kator.  All defendants subsequently filed motions to dismiss on August 8, 2000 and August 4, 2000, respectively, asserting that the plaintiff had failed to state

a claim on any of the four counts set forth in her complaint.  The federal defendants also filed a

Motion to Unseal the case on August 7, 2000.  The plaintiff filed a single opposition to all three

motions on September 7, 2000.  In response, the federal defendants filed a Motion for Further

Enlargement of Time in which to reply to the plaintiff's opposition, and subsequently filed a

Reply to Plaintiff's Opposition to Federal Defendants' Motion to Dismiss and a Reply to

Plaintiff's Opposition to Federal Defendants' Motion to Unseal on October 27, 2000.  Defendant

Kator also filed a Reply in Support of his Motion to Dismiss on September 18, 2000.  The

plaintiff filed a Consolidated Sur-Reply to the three motions on November 16, 2000, and the

federal defendants responded with a Motion to Strike the Sur-Reply, arguing that it was

unwarranted.  In addition, the federal defendants filed a Motion for Enlargement of Time on

November 22, 2000, in which they asked the Court for ten days following the Court's ruling on

federal defendants' Motion to Strike in which to respond to plaintiff's surreply if the motion to

strike was not granted.  Finally, the plaintiff filed a Motion Concerning Electronic Evidence and

Docket Access, in which she asked the Court: (1) for permission to file exhibits on computer

diskettes or on CD-ROM; (2) for permission to view copies of the docket sheet or documents

filed in this case; and (3) to require that the Clerk's office notify her by telephone or email so that

she could respond more quickly to motions or orders.

Upon consideration of each party's filings, the applicable law, and the entire record

herein, the Court concludes that (1) the federal defendants' Motion to Dismiss will be

GRANTED; (2) defendant Kator's Motion to Dismiss will be GRANTED; and (3) the federal

defendants' Motion to Unseal will be GRANTED.  The Court agrees with the defendants'

assertion that the plaintiff has failed to state any claim upon which relief may be granted.  The

Court further agrees with the federal defendants' contention that it is unnecessary to continue to

seal the entire record in this case.

# I. BACKGROUND

In October 1995, Plaintiff Jane Weaver was assigned to Barbara Corprew's supervision in the Fraud Section of the Criminal Division in the United States Department of Justice ("DOJ"). (Compl. 10.)  Weaver was assigned some responsibilities with respect to the Voluntary Disclosure Program ("VDP"), a program designed to deter and uncover fraud through allowing government contractors to voluntarily admit to fraudulent activity in exchange for certain benefits, such as reduction of damages, reduced chance of debarment and an additional level of review before criminal prosecution.  (Id. at 6.)  Weaver alleged that during the course of her employment she became aware that her supervisors were behaving unethically and fraudulently with respect to the VDP; that is, Weaver alleged, among other things, that her supervisors testified untruthfully before Congress, failed to keep adequate records, and disregarded VDP policies.  (Id. at 8-12.)  In response, Weaver began to disclose to various higher-level supervisors what she perceived as her supervisors' fraudulent activities.  (Id. at 13.)  As a result, Weaver claims that her supervisors retaliated against her in the form of poor performance evaluations, reprimands, transfers, searches of her office and computer, and lockouts from her office.  (Id. at 14-16, 19-21.)  In response to the alleged retaliation, Weaver hired Michael Kator, an employment attorney, in December 1996, to represent her and provide her with advice regarding her situation at the DOJ.  (Def. Kator's Mot. Dismiss 1.)  Over the next several months, Kator provided advice to Weaver and negotiated the terms of a settlement agreement between Weaver and the DOJ.  (Pl.'s Resp. 26-31.)  However, Weaver alleged that Kator violated ethical standards.  (Id. at 59-60.)  Consequently, Weaver fired Kator on June 2, 1997.  (Compl. 19.)

On June 3, 1997, Weaver entered into the settlement agreement with the DOJ, which provided for her resignation and prohibited her from filing any claims against the DOJ arising out of her employment with the DOJ or claiming that the DOJ had engaged in any improper conduct. (Defs.' Ex. 4 at ¶ 1, 10.)  In exchange for these promises, the DOJ agreed to withdraw her negative performance evaluations and expunge her reprimand, as well as to increase her salary and detail her to the United States Attorney's Office for the District of Columbia for not less than 410 days.  (Id. ¶ 2, 5-7.)  Nevertheless, Weaver claimed her supervisors' retaliation against her prevented her from disclosing their fraudulent actions and as such, constituted duress and coercion in the formation of the settlement agreement.  (Pl.'s Reply 41-42.)  However, the federal defendants contend that Weaver's status as a licensed attorney combined with the fact that she was represented by counsel until the day she signed the agreement proves that the settlement agreement was not the product of duress and coercion, but is instead a valid contract barring all of Weaver's claims relating to her employment with the DOJ.  (Defs.' Mot. Dismiss 6-9.) Furthermore, the federal defendants argue that even if Weaver's claims are not barred by the settlement agreement, she has failed to state any claim for which relief may be granted.  (Id.) Defendant Kator also argues that Weaver failed to state a claim in legal malpractice against him for which relief may be granted.  (Def. Kator's Mot. Dismiss 2-3.)

## II. DISCUSSION

### A.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), when considering a motion to dismiss for failure to state a claim upon which relief can be granted, this Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must afford

the plaintiff the benefit of all inferences that can be derived from the facts alleged.  Conley v.

Gibson, 355 U.S. 41, 45-46 (1957); Barr v. Clinton, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing

Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  Nevertheless, this Court

need not accept asserted inferences that are unsupported by the facts set forth in the complaint,

nor "legal conclusions cast in the form of factual allegations."  Kowal, 16 F.3d at 1276.

## B.  Federal Defendants' Motion to Dismiss

### 1.  Settlement Agreement

Settlement agreements are governed by state contract law.  See Perez v. Goldin, 360 F.

Supp. 2d 12, 15-16 (D.D.C. 2003); Dodge v. Tr. of Nat'l Gallery of Art, 326 F. Supp. 2d 1, 9

(D.D.C. 2004) (Lamberth, J.) (citing Sirmans v. Caldera, 148 F. Supp. 2d 14, 19 (D.D.C. 2001)

(Lamberth, J.)).  In the District of Columbia (and as a general rule of contract law), a party's

signature on a contract binds that party to the terms of the contract, even if that party is ignorant

of the terms of the contract.  Emeronye v. CACI Int'l, 141 F. Supp. 2d 82, 86 (D.D.C. 2001).

However, a contract is voidable at the option of the innocent party if that party's assent was

induced by a misrepresentation, whether fraudulent or innocent.  Id.; see also REST (2d)

CONTRACTS § 164.  Nevertheless, "a misrepresentation, even if relied upon, has no legal effect

unless the recipient's reliance on it is justified."  Id.  To prove fraudulent misrepresentation, the

plaintiff bears the burden of demonstrating that: (1) the defendant made an assertion that was not

in accordance with the facts; (2) the assertion was material; (3) the plaintiff  relied upon the

assertion to her detriment; and (4) the plaintiff was justified in relying on the assertion in

manifesting her asset.  Barrer v. Women's Nat'l Bank, 761 F.2d 752, 758 (D.C. Cir. 1985).  The

burden is on the party seeking to rescind a contract for fraud or misrepresentation to prove that

she signed the contract in reliance upon the truthfulness of the representations.  27 Richard A.

Lord, WILLISTON ON CONTRACTS § 69:33 (4th ed. 1997); see also 2215 Fifth St. Assocs., LP v.

U-Haul Int'l, Inc., 148 F.Supp. 2d 50, 55 (D.C. Cir. 2001) (rejecting claims of coercion in the

signing of an agreement including a forum selection clause).

A contract is also voidable at the innocent party's option when entered into under duress

or coercion.  28 Richard A. Lord, WILLISTON ON CONTRACTS § 71:12.  Duress is "any wrongful

threat of one person by words or other conduct that induces another to enter into a transaction

under the influence of such fear as precludes him from exercising free will and judgment."

Marra v. Papandreou, 59 F. Supp. 2d 65, 70-71 (D.D.C. 1999).  Coercion includes a compulsion

brought about by moral force or in some other manner with or without physical force.  28

Richard A. Lord, WILLISTON ON CONTRACTS § 71:12.

The plaintiff asks this Court to rescind the settlement agreement, alleging that her former

supervisor, defendant Sandra Bright, misrepresented the content of the agreement by reassuring

the plaintiff that the agreement would give her a "fresh start" and "a legitimate opportunity to

prove herself and secure continued employment."  (Pl.'s Resp. 34.)  The plaintiff also alleges that

defendant Bright assured the plaintiff that she would "personally would see that the plaintiff

would be employed by another agency component" in the "unlikely" event that the plaintiff failed

to secure employment during her detail to the United States Attorneys Office for the District of

Columbia.  (Id.)  Furthermore, the plaintiff asks this Court to rescind the agreement because she

signed it under duress and coercion, alleging that her supervisors retaliated against her in the

form of lockouts and office searches. (Id.)

The defendants contend that the plaintiff has failed to demonstrate that the agreement was

entered into under duress, coercion or misrepresentation.  (Defs.' Reply 4-5.)  The defendants

argue that the plaintiff, a licensed attorney, has set forth no evidence that she did not understand

the terms of the agreement or that her decision to sign it was not informed.  (Id. at 8.)

Accordingly, the defendants conclude that the plaintiff voluntarily signed the agreement with full

knowledge and understanding of its contents and therefore the plaintiff is bound by the

agreement. (Id.)  As discussed below, the Court agrees with the defendants.

### A. Misrepresentation

Even if the plaintiff were able to satisfy the first three elements required to prove

misrepresentation, she cannot satisfy the fourth because she was not justified in relying on any

representations made by Bright.  See Barrer, 761 F.2d at 758.  Reliance by sophisticated and

educated individuals usually vitiates a party's claim of fraud or misrepresentation in the

inducement.  See Schlaifer Nance & Co. v. Estate of Andy Warhol, 119 F.3d 91, 98 (2d Cir.

1997).

The plaintiff is a licensed attorney familiar with the law of contracts.  Even if defendant

Bright misrepresented information contained in the agreement, the plaintiff was entirely capable

of reading and fully understanding the agreement.  See Brown v. Dorsey & Whitney, LLP, 267 F.

Supp. 2d 61, 79 (D.D.C. 2003) (citing Hooters of Am v. Phillips, 39 F. Supp. 2d 582, 607

(D.S.C. 1998)) (rejecting the plaintiff's claim of fraudulent inducement as a defense to signing

her employer's binding arbitration agreement because the truth of the representation "would have

been evident by an inspection" of the agreement).  One cannot claim fraud in the

misrepresentation of the contents of written instruments "when the truth could have been

ascertained by reading the instrument, since one entering into the written contract should read it

and avail himself of every opportunity to understand its content and meaning." Id.  This rule

especially applies to licensed attorneys, who possess a heightened knowledge of the law of

contracts when compared with non-attorneys.  See id. at 46-47 ("[P]laintiff, a Harvard educated

attorney with a Princeton undergraduate degree and at least seven years of prior legal experience

when she signed the agreement . . . clearly was not an unknowledgeable or uneducated person

dealing with an employer with superior bargaining power.").  Not only was the plaintiff fully

capable of reading and understanding the agreement, but, as a licensed attorney, she should have

especially appreciated the implications of signing an agreement without reading and

understanding it.  It is not justifiable for a licensed attorney to sign an agreement based solely on

the representations of the other party to the agreement; the plaintiff should have read the

agreement for herself instead of relying on any representations made by defendant Bright.  A

reasonable person in the plaintiff's circumstances would have read the agreement in order to

ensure that the terms of the agreement were consistent with the representations of the other party

to the agreement.  See Perez, 360 F. Supp. 2d at 16 (applying an objective reasonableness

standard in determining whether the plaintiff entered into an agreement under duress).

    In fact, if the plaintiff had simply read the agreement, she would have realized that the

DOJ was not bound to continue her employment indefinitely.  (Def.'s Ex. 4 § 8.)  Even a non-

lawyer likely would have had little difficulty in understanding the clear provisions set out in the

agreement.  The agreement quite clearly stated that the plaintiff agreed to immediately resign as

an attorney in the Criminal Division of the DOJ.  (Id. § 1.)  The agreement further stated that the

DOJ would merely use its "best efforts" to place the plaintiff in the DOJ where she would have

the opportunity to "prove herself and secure continued employment."  (Id. § 8.)  Nothing in the

agreement guaranteed employment to the plaintiff.  (Id.)  In fact, the agreement placed the burden

on the plaintiff to "prove herself" in order to "secure continued employment."  (Id.)  It is well-

settled that where the terms of an agreement are clear and unambiguous, the intent of the parties

is determined from the plain words of the agreement and parol evidence is not considered.  See

Bowden v. United States, 176 F.3d 552, 554 (D.C. Cir. 1999) ("[Extrinsic] evidence of prior or

contemporaneous oral agreements is inadmissible to vary the terms of an integrated written

agreement.").  Given the clarity of the agreement and the plaintiff's status as an attorney, this

Court declines to accept the plaintiff's contention that she justifiably relied on representations

made by her supervisor with respect to the content of the agreement.  Therefore, the plaintiff's

claims of misrepresentation are dismissed.

**B. Duress and Coercion**

In order to state a prima facie claim of duress, the plaintiff must establish that her supervisors wrongfully threatened her, inducing her to sign the agreement under the influence of such fear as precluded her from exercising free will and judgment.  Marra, 59 F. Supp. 2d at 70-71.  The plaintiff has produced no evidence of any threats, verbal or physical, made against her.  Instead, she alleges that searches of her office and lockouts constituted duress, and induced her to enter into the agreement against her will.  (Pl.'s Reply 41-42.)  However, the actions allegedly taken by her supervisors, even if true, were not wrongful threats against the plaintiff.  At most, these actions constituted retaliation against the plaintiff because she publicly accused her supervisors of fraud.  That the alleged retaliation continued even after the plaintiff reported the supposed fraud supports the conclusion that the defendants' actions of retaliation were not threats made to keep the plaintiff from disclosing the fraud.  (Compl. 19-20.)  These actions, therefore, cannot be interpreted as threats against the plaintiff.

Even if the defendants' actions could be interpreted as threats, the plaintiff has shown no relationship between these events and the settlement agreement.  She has failed to demonstrate how the actions allegedly taken by her supervisors coerced her into signing the agreement; the plaintiff does not claim that the two lockouts or the computer search occurred because she had not signed the agreement.  (Id. at 15-16, 19-20.)  Indeed, the plaintiff alleges that access to her office remained restricted even after she signed the agreement.  (Id. at 19-20.)  Therefore, the alleged lockouts could not have been coercive actions designed to force the plaintiff to sign the agreement.  Furthermore, the plaintiff failed to claim duress and coercion until she was no longer satisfied with the results of the agreement.  She accepted her detail to the United States

10

Attorney's Office for six months and when the detail was not extended, she accepted 90 days of paid administrative leave.  It was only when she was notified that her DOJ employment would cease that she claimed duress and coercion in the execution of the agreement.

In an analogous inquiry to the one at bar,  this Court has considered the following in determining whether a contract is unconscionable: (1) the education level of the plaintiff; (2) the relative bargaining power of the parties; (3) whether the plaintiff had a reasonable opportunity to read and understand the contract; and (4) whether the agreement unreasonably favors the defendant.  See Brown, 267 F. Supp. 2d at 72-77.  These factors do not support the plaintiff's claims of coercion and duress.  First, the plaintiff received adequate consideration for the release. (Def.'s Ex. 4 § 2,5-7.)  Indeed, she received several benefits in consideration for releasing all claims against the DOJ.  (Id.)  For instance, the plaintiff received a within-grade salary increase. (Id. § 6.)  In addition, the DOJ agreed to withdraw the plaintiff's unfavorable performance appraisal and expunge a reprimand, among other things, from her record.  (Id. § 5, 7.)  The plaintiff was also given a temporary appointment to the United States Attorney's Office for the District of Columbia.  (Id. § 2-3.)  Moreover, the DOJ paid $6,000 of the plaintiff's attorney's fees.  (Id., ¶ 11.)  These benefits conferred upon the plaintiff vitiate her claim that the agreement was substantially one-sided or unconscionable.

Second, the plaintiff was represented by independent counsel until the day before she signed the agreement.  A plaintiff who consents to a settlement on the advice of counsel or whose attorney actively negotiates settlement on the plaintiff's behalf is presumed to have knowingly and voluntarily consented to settlement on the agreed terms.  Wise v. Riley, 106 F. Supp. 2d 35, 39 (D.D.C. 2000).  The plaintiff was represented by counsel until the day she signed the

agreement, and her counsel was actively involved in the lengthy negotiation of the agreement on the plaintiff's behalf. The plaintiff's representation by counsel during the lengthy negotiation of the agreement undermines the plaintiff's claims that she was coerced into signing an agreement that she did not understand. This Court does not accept the plaintiff's contentions that she, a licensed attorney, represented by counsel over a lengthy period of time who negotiated the agreement on her behalf, was somehow coerced by the other party to the agreement into signing an agreement that was not in her best interest.

Finally, public policy encourages the drafting of settlement agreements and, likewise, settlement agreements are highly favored by the judicial system because they allow the parties to avoid the expense and delay of full litigation. <u>Perez</u>, 360 F. Supp. 2d at 16.

Given these circumstances, in conjunction with the plaintiff's failure to claim that the lockouts and computer searches occurred because she had not signed the agreement, the plaintiff has not stated a claim for duress or coercion inducing her to sign the agreement. For these reasons, the Court dismisses the plaintiff's claims of duress and coercion against the federal defendants. Therefore, the plaintiff is barred from asserting any claims relating to her employment at the DOJ.

## 2. RICO

RICO creates a civil right of action for individuals "injured in [their] businesses or property by reason of a violation of 18 U.S.C. 1962." Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964 (1994). § 1962(b) makes it unlawful to acquire an interest through "racketeering activity" in any enterprise that affects interstate commerce. § 1962(c) makes it unlawful for any person associated with any enterprise, the activities of which affect

interstate commerce, to conduct or participate in the conduct of such enterprise's affairs through a "pattern of racketeering activity."  Finally, § 1962(d) makes it unlawful to conspire to violate  § 1962(b) or § 1962(c).   "Racketeering activity" as defined in § 1962 includes a litany of offenses made unlawful in various sections of the United States Code, including mail fraud (§ 1341) and tampering with witnesses (§ 1512).  18 U.S.C. § 1961(1).  A "pattern of racketeering activity" constitutes two or more predicate acts of racketeering.  18 U.S.C. § 1961(5); <u>Meng v. Schwartz</u>, 116 F. Supp. 2d 92, 95 (D.D.C. 2000).

The plaintiff seeks a civil remedy under § 1964, alleging that she "has been injured in her legal business as well as personal property" by the federal defendants' alleged RICO violations under §§ 1962(b)-(d).  (Compl. 24.)  The plaintiff alleges the computer searches and office lockouts constituted a violation of § 1512, which prohibits tampering with a potential witness under § 1512.  (<u>Id.</u> at 23.)  The plaintiff further alleges that the federal defendants committed mail fraud under § 1341 by transmitting false statements to Congress.  (<u>Id.</u> at 24.)  The defendants contend that the settlement agreement bars the plaintiff's claims under RICO, as her claims involve actions taken during the course of her employment at the DOJ.  (Defs.' Reply 9.) The defendants further contend that even if the settlement agreement does not bar the plaintiff's RICO claims, the plaintiff has nevertheless failed to state a claim under RICO.  (<u>Id.</u> at 10.)  As discussed below, the Court agrees with the defendants and therefore dismisses the plaintiff's RICO claim.

The plaintiff has failed to demonstrate that the federal defendants were involved in an "enterprise" as required by § 1962.  <u>See</u> 18 U.S.C. §§ 1962(b)-(c).  The plaintiff has further failed to demonstrate how any alleged "enterprise" affects interstate commerce as required by § 1962.

13

Id.  However, even if this Court found that the plaintiff adequately demonstrated the required elements to prove the existence of a prohibited activity under §§ 1962(b)-(d), the plaintiff's civil RICO claim still fails because the claims involve actions allegedly taken during the course of her employment at the DOJ and therefore are barred by the Court's holding with respect to the settlement agreement.  See supra Section I.B.1.

Nevertheless, even if the plaintiff's RICO claims were not barred by the settlement agreement, she has failed to state a claim under RICO because she has not demonstrated proximate causation. The Supreme Court has held that §1961 requires that the "predicate acts" constituting the RICO violation proximately caused the injury claimed by the plaintiff.  See Holmes v. Security Investor Protection Corp., 503 U.S. 258, 268 (1992).  This Court has recently held that proximate causation "demands that the plaintiff be the 'intended target[] of the RICO violation.'"  Meng, 116 F. Supp. 2d at 96 (citing Lewis ex rel. Am. Express Co. v. Robinson, 39 F.3d 395 (2d Cir. 1994 )).  In Meng, this Court found that the plaintiff's alleged injuries were not proximately caused by the supposed RICO violations.  Id. at 96-97.  This Court held that the defendant's alleged bribery was undertaken to benefit the defendant's company by harming its competitors, not to harm the plaintiffs (shareholders of the corporation).  Id.  Thus, because the shareholders were not the intended targets of the defendant's actions, the shareholders failed to state a claim under RICO.

In this case, the plaintiff has alleged that the federal defendants violated RICO by falsifying information to Congress and retaliating against the plaintiff for revealing this alleged fraud.  (Compl. 24-25.)  However, even if the federal defendants retaliated against the plaintiff, this does not constitute a RICO violation under § 1962 because it is not a "racketeering activity"

14

as defined in § 1961.  <u>See</u> 18 U.S.C. §§ 1962, 1961.  The list of activities that constitute

racketeering does not include employer retaliation. <u>See</u> 18 U.S.C. § 1961.  Furthermore, even if

the federal defendants did provide false information to Congress, and even if such fraud

constituted mail fraud under § 1341, the plaintiff has nevertheless failed to demonstrate

proximate causation between the alleged fraudulent actions taken by the federal defendants and

her injury.  Here, as in <u>Meng</u>, the plaintiff was not the intended target of the alleged actions taken

by the federal defendants.  <u>See</u> <u>Meng</u>, 116 F. Supp. 2d at 96.  The actions taken by the federal

defendants, if true, were presumably taken in order to avoid congressional entanglement in the

VDP and to improve the reputation of the Fraud Section, which would in turn benefit the

plaintiff.  Therefore, since the plaintiff was not the intended target of the alleged predicate acts,

namely defrauding Congress as to the status of the VDP, the plaintiff has failed to demonstrate

proximate causation and therefore her civil RICO claim must be dismissed.

**3.  <u>Bivens</u> Claims**

The plaintiff claims a cause of action against the federal defendants individually, pursuant

to the Supreme Court's holding in <u>Bivens v. Six Unknown Agents of the Fed. Bureau of</u>

<u>Narcotics</u>, 403 U.S. 388 (1971), claiming violations of her Fourth and Fifth Amendment rights.

She alleges that the October 1996 lockout and search of her office violated her Fourth

Amendment right to be free from unreasonable searches and seizures.  (Compl. 24-25.)  The

plaintiff further alleges that she was denied due process under the Fifth Amendment because she

was denied: (1) an investigation of the violations she alleged with respect to the VDP; (2) an

opportunity to be heard within the DOJ's grievance procedures; and (3) notice of her appellate

rights outside the DOJ.  (<u>Id.</u>)  The defendants contend that she has failed to state any claim under

the Fourth and Fifth Amendments, and even if she had, her claims are either time-barred by the

statute of limitations or do not support creation of a <u>Bivens</u> remedy. (Defs.' Mot. Dismiss 14-29.)

As discussed below, the Court agrees with the defendants.

### A.  Statute of Limitations

The plaintiff concedes that most of her claims are subject to a three-year statute of

limitations under District of Columbia law.  (Pl.'s Resp. 55.)  She filed her complaint on May 16,

2000.  Therefore, the majority of the plaintiff's constitutional claims are time-barred.  The

plaintiff's Fourth Amendment claims based on allegations that her office was searched and a

personal item was seized in October 1996 are time-barred.  (Compl. 15-16.)  In addition, the

plaintiff's allegations that she was locked out of the building in October 1996 are also time-

barred. (<u>Id.</u>)  Finally, the plaintiff's Fifth Amendment claim that she was denied due process

concerns events that occurred between October 4, 1996 and March 1998, and therefore any

events occurring before May 16, 1997 are time-barred.  Thus, the plaintiff's only claims that are

not time-barred are the alleged office lockout on June 1, 1997 and her Fifth Amendment due

process claims relating to events occurring on or after May 16, 1997.  Nevertheless, she asks the

Court to consider equitable tolling with respect to those events that are time-barred, based on her

allegations of misrepresentation and fraud on the part of the federal defendants.  The federal

defendants contend that equitable tolling should only be used in extraordinary circumstances and,

given the plaintiff's status as an attorney who is aware of the existence and importance of statutes

of limitations, the case at bar does not justify equitable tolling.  The Court agrees.

The Court of Appeals for this Circuit has held that a statute of limitations is subject to

equitable tolling only in extraordinary and carefully circumscribed instances, such as delay

16

caused by a court's administrative procedures or where the court had led the plaintiff to believe that she had done everything required.  See Mondy v. Sec. of the Army, 845 F.2d 1051, 1057 (1988); Washington v. White, 231 F. Supp. 2d 71, 75-76 (D.D.C. 2002).  Other examples of extraordinary circumstances include inadequate notice, a pending motion for appointment of counsel where equity would justify tolling the statutory period until the motion is acted upon, and affirmative misconduct on the part of the defendant that "lulled plaintiff into inaction."  Mondy, 845 F.2d at 1057.  The plaintiff requests equitable tolling based on allegations of "concealment" and "misrepresentations" by the federal defendants.  (Pl.'s Resp. 55.)  The plaintiff does not demonstrate how any of the defendants' alleged misrepresentations relating to the settlement agreement, if true, prevented her from timely filing any Fourth or Fifth Amendment claims.  Furthermore, given the plaintiff's status as an attorney, she was aware of the existence and importance of statutes of limitations and was therefore aware that she must file her claims in a timely manner.  Even though she considered the office search and lockouts violations of her rights, as evinced by her emails in Exhibits C and D, she nevertheless failed to file a timely claim.  Therefore, this Court will not grant the plaintiff's request for equitable tolling because the Court will not accept the plaintiff's claim that she, an experienced attorney, was unaware that she may have had a constitutional claim or was somehow duped into believing she should not make such a claim.  Consequently, the plaintiff's only valid constitutional claims relate to the alleged office lockout on June 1, 1997 and the Fifth Amendment due process claims relating to events occurring on or after May 16, 1997.

### B.  Special Factors Counseling Against a <u>Bivens</u> Remedy

With respect to the plaintiff's remaining claims, the defendants contend that the Civil

Service Reform Act ("CSRA") is the plaintiff's exclusive remedy for her Fourth and Fifth Amendment claims.  (Defs.' Mot. Dismiss 16-17.)  The Court disagrees with the defendants' assertion that the CSRA is the plaintiff's exclusive remedy for her Fourth and Fifth Amendment claims, and therefore will consider the merits of the plaintiff's constitutional claims.

§ 1221 of the CSRA provides an individual right of action in certain reprisal cases, allowing an employee to seek corrective action from the Merit Systems Protection Board ("MSPB") if the employer has engaged in a "prohibited personnel practice."  5 U.S.C. § 1221 (1994).  A prohibited personnel practice includes taking a "personnel action" with respect to any employee because of "any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences a violation of any law, rule, or regulation."  5 U.S.C.§ 2302(b)(8).  A "personnel action" includes a litany of events that pertain to the plaintiff's claims, including "disciplinary or corrective action," a "performance evaluation," and a "detail, transfer, or reassignment," as well as "any other significant change in duties, responsibilities, or working conditions." 5 U.S.C. §§ 2302(a)(2)(A)(iii), (iv), (viii), (xi).

Consistent with Supreme Court precedent, this Court has held that "special factors" preclude the creation of a Bivens remedy for civil service employees and applicants who advance constitutional challenges to federal personnel actions under the CSRA.[1]  See Spagnola v. Mathis,

---

[1]Courts have been hesitant to extend a Bivens remedy into the employer-employee relationship between the federal government and its employees.  See Bush v. Lucas, 462 U.S. 367 (1983); Schweiker v. Chilicky, 187 U.S. 412 (1988); Spagnola v. Mathis, 859 F.2d 223 (D.C. Cir. 1988); Briscoe v. Potter, 355 F. Supp. 2d 30 (D.D.C. 2004).  In Bush, the Supreme Court refused to allow a federal employee to bring a Bivens action alleging a constitutional violation against his supervisor because "the administrative review mechanisms created by Congress [through the CSRA] provided meaningful redress and thereby foreclosed the need to fashion a new, judicially crafted cause of action."  Bush, 462 U.S. at 421; see also Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 68 (2001).  Therefore, "so long as the plaintiff has an avenue for

859 F.2d 223, 230 (D.C. Cir. 1988); Briscoe v. Potter, 355 F. Supp. 2d 30, 38 (D.D.C. 2004).

Therefore, a plaintiff is precluded from additionally claiming a right of action under Bivens, so

long as the plaintiff can claim an individual right of action for reprisal under § 1221 of the

CRSA.  However, the plaintiff has no avenue for such redress of her Fourth and Fifth

Amendment claims under the CSRA because the events that she has alleged in support of her

claims do not fall under the definition of "personnel action" under the CSRA.  In support of her

Fourth Amendment claim, the plaintiff asserts that her supervisors conducted a warrantless

search of her office.  However, in Bush v. Lucas, the Supreme Court specifically stated that

"warrantless searches . . . would not be defined as 'personnel actions' under [§ 2302(a)(2)(A) of

the CSRA]."  462 U.S. 367, 386 n.28 (1983).  Therefore, the plaintiff's claims are cannot be

redressed under the CRSA because they are outside the definition of a "personnel action."  In

support of her Fifth Amendment claim, the plaintiff alleges that the DOJ failed to: (1) investigate

the plaintiff's allegations of wrongdoing by her supervisors with respect to the VDP; (2) give her

an opportunity to be heard within the DOJ's grievance procedure; and (3) given her notice of

appellate her rights outside the DOJ.  (Compl. 24-25.)  Again, none of these events are included

in the definition of "personnel actions" under § 2302(a)(2)(A) of the CSRA.  Therefore, although

the plaintiff may be able to state a claim under the CSRA for many other "personnel actions,"

such as unfavorable performance reports, disciplinary actions, and significant changes in duties,

the plaintiff has no claim under the CSRA with respect to her Fourth and Fifth Amendment

claims because the events supporting those claims do not fall under the definition of "personnel

_____

*some redress*, bedrock principles of separations of powers foreclose [] judicial imposition of a
new substantive liability."  Schweiker, 187 U.S. at 425-27.

actions" under § 2302(a)(2)(A) of the CSRA.  Thus, because there is no administrative redress

for these claims, the plaintiff's <u>Bivens</u> claims are appropriate and this Court will determine the

merits of such claims.

### C.  Substantive Constitutional Claims

This Court has held that <u>Bivens</u> claims may be limited by a government official's

qualified immunity.  <u>See</u> <u>Dodge</u>, 326 F. Supp. 2d at 12.  Government officials enjoy qualified

immunity from suits for damages to "shield them from undue interference with their duties and

from potentially disabling threats of liabilities."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 819 (1982).

There is a two-step analysis in determining whether qualified immunity applies.  <u>Dodge</u>, 326 F.

Supp. 2d at 12.  First, the court must evaluate whether the plaintiff has been deprived of an actual

constitutional right.  <u>Id.</u>  That is, "taken in the light most favorable to the party asserting the

inquiry, do the facts alleged show the officer's conduct violated a constitutional right?"  <u>Id.</u>

(citing <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)).  If the first inquiry is satisfied, the court must

next determine whether this right was "clearly established" such that a reasonable federal official

would have been aware that her conduct was unlawful.  <u>Id.</u> at 13 (citing <u>Saucier</u>, 533 U.S. at

202).  Federal officers not on notice that their conduct is clearly unlawful enjoy the protection of

qualified immunity.  Here, it is unnecessary to analyze the second prong of the test because

neither of the plaintiff's constitutional claims can satisfy the first prong.

### i.  Fourth Amendment Claims

Because the October 1996 office search is time-barred under the statute of limitations, the

plaintiff's only remaining Fourth Amendment claim relates to the office lockout on June 1, 1997.

The defendants contend that an office lockout does not constitute a Fourth Amendment violation.

The Court agrees.

Even viewed in the light most favorable to the plaintiff, her Fourth Amendment claim does not pass muster under the first prong because she was not deprived of an actual constitutional right.  See Dodge, 326 F. Supp. 2d at 12.  The plaintiff cites no authority for her contention that an office lockout constitutes a Fourth Amendment violation and the Court is aware of no case where an office lockout was considered a Fourth Amendment violation.  Instead she relies on O'Connor v. Ortega, 480 U.S. 709 (1987), where the Supreme Court rejected the view that a government employee could never have a reasonable expectation of privacy in their place of work.  Relying on Ortega, she claims that the lockouts were "simply unreasonable" and "violated plaintiff's legitimate privacy expectations."  (Pl.'s Reply 47.)  However, the plaintiff's reliance on Ortega is misplaced.  Nothing in Ortega stands for the proposition that an employee's constitutional rights are violated when she is denied access to her office.  Indeed, Ortega did not address an office lockout, but instead addressed an office search.  Ortega, 480 U.S. at 712-14.  The search of an office and being denied access to an office are events too dissimilar to be treated as indistinguishable.  In addition, the facts in Ortega were more problematic than the facts here.  In Ortega, the office search extended to the physician's desk and file cabinets and the employer seized personal items such as a book of poetry and a Valentine card.  Id. at 713.  Those facts cannot reasonably be compared to an office lockout.

Because the plaintiff's Fourth Amendment claim does not pass muster under the first prong of the test, it is not necessary to discuss the second prong.  Thus, the federal defendants enjoy qualified immunity to the plaintiff's Fourth Amendment claims.  Therefore, the plaintiff's Fourth Amendment claim regarding the office lockout is dismissed.

### ii. Fifth Amendment Claims

In her complaint, the plaintiff claims that her Fifth Amendment rights were violated when she was allegedly denied an opportunity to be heard within the DOJ's grievance procedure and was not notified of her appellate rights outside the DOJ.  (Compl. 24-25.)  She also claims a Fifth Amendment violation as a result of the DOJ's failure to investigate the alleged VDP violations. (Id. at 24.)  However, in her response to the defendants' motion to dismiss, the plaintiff instead seems to be arguing that her Fifth Amendment rights were violated because she was given neither notice nor a hearing before she was terminated.  (Pl.'s Resp. 49-50.)  The defendants contend that the plaintiff failed to respond to the defendants' motion to dismiss with respect to the Fifth Amendment claims alleged in the complaint, and therefore the defendants' arguments should be conceded.  (Defs.' Reply 20.)  With respect to the plaintiff's claims set forth in her response to the defendants' motion to dismiss, the defendants contend that the plaintiff has no right to a hearing because she resigned pursuant to a settlement agreement and was not terminated.  (Id. at 19-20.)  The Court agrees with the defendants.

Even viewed in the light most favorable to the plaintiff, the facts do not demonstrate that the plaintiff was deprived of an actual constitutional right.  Therefore, she again cannot satisfy the first prong of the test.  The plaintiff has provided absolutely no authority supporting her argument that a government employee's Fifth Amendment rights are violated when the DOJ, through an established grievance procedure, provides her with an opportunity to submit a written grievance form but not an opportunity to present oral evidence.  Similarly, the plaintiff has provided no authority supporting her argument that her Fifth Amendment rights are violated if the DOJ does not notify her of any available appellate rights outside of the DOJ grievance

procedure.  Finally, the plaintiff has failed to provide any authority supporting a Fifth

Amendment violation resulting from a failure to investigate alleged violations.  In fact, there is

authority to the contrary.  The Supreme Court has held that the due process clause applies "when

governmental agencies adjudicate or make binding determinations which directly affect the legal

rights of individuals" but not "when governmental action does not partake of an adjudication, as

for example, when a general fact-finding investigation is being conducted."  Hannah v. Larche,

363 U.S. 420, 442 (1960).  Citing Hannah, this Court has held that no due process rights exist

where the agency is exercising a fact-finding function instead of an adjudicating function.

Fraternal Order of Police, D.C. v. Rubin, 26 F. Supp. 2d 133, 144-45 (D.D.C. 1998).  Moreover,

in both Hannah and Rubin, the individuals claiming violations of due process rights were those

individuals who were themselves being investigated by the agency.  Here, the plaintiff is

claiming a due process violation as a result of the DOJ's alleged failure to investigate the alleged

misconduct of other individuals.  Surely, if the individuals who themselves are under

investigation do not receive due process protections in a nonadjudicatory setting, the plaintiff

cannot claim a due process violation because of the DOJ's alleged failure to investigate

individuals other than herself.  The Court is not aware of any authority finding a Fifth

Amendment violation in similar circumstances.  Thus, the defendants enjoy qualified immunity

with respect to the Fifth Amendment claims set forth in the complaint.

    With respect to the claims set forth in the response, the plaintiff is correct that public

employees have a right to notice and a hearing before or after termination of employment.  (Pl.'s

Resp. 49-50.)  However, the plaintiff was not terminated: she resigned, pursuant to a valid

settlement agreement.  Therefore, because she was not terminated, she has no Fifth Amendment

rights to a hearing upon termination.  Consequently, she cannot satisfy the first prong of the test

and the defendants are entitled to qualified immunity with respect to the claims set forth in the

response.  The plaintiff's Fifth Amendment claims are therefore dismissed.

### 4. FTCA Claims

The plaintiff claims a violation of the FTCA on the grounds that the federal defendants

"were employed by the United States Departments of Justice and Defense, and their tortious

activities harmed the plaintiff."  (Compl. 26.)  The federal defendants contend that the plaintiff's

claims are invalid because she has failed to exhaust her administrative remedies as required by 28

U.S.C. § 2675(a).  The plaintiff asserts that she has exhausted her administrative remedies by

writing a letter to the Deputy Attorney General.  The defendants contend that such letter does not

satisfy the statutory requirements.  The Court agrees.

The FTCA requires that a plaintiff file an administrative claim that contains: "(1) a

written statement sufficiently describing the injury to enable the agency to begin its own

investigation, and (2) a sum-certain damages claim."  GAF Corp. v. United States, 818 F.2d 901,

919 (D.C. Cir. 1987).  The plaintiff's letter did not contain a "sum-certain damages claim."

Therefore, the plaintiff has not exhausted her administrative remedies as required by the FTCA.

Accordingly, the plaintiff's tort claims against the federal defendants are dismissed for lack of

subject matter jurisdiction and failure to exhaust administrative remedies.

### C.  Defendant Kator's Motion to Dismiss

The plaintiff also brings a malpractice claim against her former attorney, Michael J.

Kator.  (Compl. 26.)  She claims that he violated "ethical standards" as well as his "fiduciary

duty" to plaintiff.  (Id. at 26; Pl.'s Resp. 59.)  Specifically, the plaintiff alleged joint

representation, an incorrect assessment of the plaintiff's constitutional rights, and misrepresentations about the defendant's loyalty and diligence.  (Pl.'s Resp. 59.)  The defendant contends that the plaintiff fails to state a claim for malpractice.  The Court agrees.

The test of sufficiency of a malpractice claim is whether the allegations, if true, would state an actionable dispute.  See Perez, 360 F. Supp. 2d at 16 (citing Macktal v. Garde, 111 F. Supp. 2d 18, 21 (D.D.C. 2000)).  To state a claim for professional malpractice, a party must establish: (1) the attorney's duty to use such skill, prudence, and diligence exercised by other members of the profession; (2) a breach of that duty; (3) proximate causation connecting the negligent conduct and the resulting injury; and (4) actual loss resulting from the attorney's malpractice.  Id.

The plaintiff alleges facts that, even if true, are insufficient to constitute malpractice.  As in Perez, the plaintiff has alleged "scant background facts that are broad and unsupported."  Id. at 17.  The plaintiff merely alleges that the defendant violated "numerous ethical standards" and violated his fiduciary duty to plaintiff.  (Compl. 26; Pl.'s Resp. 59.)  She butresses her allegation of joint representation with an unsupported claim that the defendant "conspired with persons other than plaintiff, against plaintiff's interests."  (Pl.'s Resp. 59.)  In addition, the plaintiff broadly states that the defendant "misrepresented his loyalty and diligence." (Id.)  Again, her allegations are broad and unsupported and, even if true, cannot support a malpractice claim.

Furthermore, the plaintiff fails to establish a causal connection between her alleged injuries and the defendant's conduct.  The plaintiff merely alleges that the defendant "did not fulfill his professional duties, which harmed the plaintiff considerably."  (Id. at 60.)  The plaintiff not only fails to explain the specific harm suffered, but she also fails to explain how defendant

Kator caused any such injury.  To the contrary, the facts demonstrate that the defendant

negotiated a settlement agreement which gave the plaintiff considerable benefits.  Regardless, the

plaintiff has failed to allege any specific injury and any causal connection between the

defendant's conduct and any injury.  Therefore, the Court dismisses the plaintiff's malpractice

claims against defendant Kator.

**D. Federal Defendants' Motion to Unseal**

Even though "it [was] not clear to the Court that there [was] an appropriate justification

for proceeding under seal," this case was sealed on May 16, 2000 by Chief Judge Norma H.

Johnson in response to the plaintiff's motion.  (Order 1.)  The Chief Judge preliminarily sealed

the case because the plaintiff alluded to disclosures of grand jury materials necessary to proceed

with her case.  (Id. at 1-2.)  However, the Chief Judge expressed doubt that there was any

compelling need for proceeding under seal and recommended reexamination of the propriety of

keeping the record sealed by the judge assigned to this matter.  (Id. at 2.)  The defendants have

filed a Motion to Unseal, and therefore this Court will determine the appropriateness of

continuing to seal this case.

This Court has recognized a strong presumption in favor of public access to judicial

proceedings.  Cobell v. Norton, 157 F. Supp. 2d 82, 88 (D.D.C. 2001) (Lamberth, J.).  This Court

has stated:

> Indeed, the presumption in favor of disclosure has led this jurisdiction
> to caution that access may be denied only if the district court, after
> considering the relevant facts and circumstances of the particular
> case, and after weighing the interests advanced by the parties in light
> of the public interest and the duty of the courts, concludes that justice
> so requires. The court's discretion must clearly be informed by this

26

> country's strong tradition of access to judicial proceedings.   In
> balancing the competing interests, the court must also give
> appropriate weight and consideration to the presumption however
> gauged in favor of public access to judicial records. Any denial or
> infringement of this precious and fundamental common law right
> remains subject to appellate review for abuse.

Id.  Nevertheless, this Court has recognized that the strong presumption against sealing may be

overcome by examining six factors: (1) the need for public access to the documents at issue; (2)

the extent to which the public had access to the documents prior to the sealing order; (3) the fact

that a party has objected to disclosure and the identity of that party; (4) the strength of the

property and privacy interests involved; (5) the possibility of prejudice to those opposing

disclosure; and (6) the purposes for which the documents were introduced.  Id. at 88 (citing

United States v. Hubbard, 650 F.2d 293, 317-322 (D.C. Cir. 1980)).  The plaintiff has failed to

address any of the above factors and therefore cannot overcome the presumption against sealing.

However, if there is a particular document or piece of information that the plaintiff believes

should be under seal, that particular document or piece of information may be filed under seal.  It

is unnecessary to continue to seal the entire record wholesale; the plaintiff has not demonstrated

otherwise.  Therefore, the defendants' motion to unseal is granted.

**E.  Federal Defendants' Motion for Further Enlargement of Time**

The federal defendants filed a Motion for Further Enlargement of Time in which to

respond to the plaintiff's opposition to the federal defendant's Motion to Dismiss and Motion to

Unseal on October 6, 2000.  The federal defendants requested an extension of time to October

19, 2000.  The plaintiff opposed the federal defendants' motion.  The federal defendants filed

their reply on October 27, 2000.  The federal defendants' motion is GRANTED *nunc pro tunc*

and the untimely motion will be considered by the Court.

**F.  Federal Defendants' Motion to Strike**

The federal defendants filed a Motion to Strike the plaintiff's Consolidated Sur-Reply on

November 22, 2000, in which the federal defendants argued that the plaintiff was not entitled to

file a surreply.  (Mot. Strike 1.)  The federal defendants' Motion to Strike is DENIED and the

plaintiff's surreply will be considered by the Court.

**G.  Federal Defendants' Motion for Enlargement of Time**

The federal defendants filed a Motion for Enlargement of Time on November 22, 2000,

in which they asked the Court for ten days following the Court's ruling on federal defendants'

Motion to Strike in which to respond to plaintiff's surreply if the motion to strike was not

granted.  Because all of plaintiff's claims are dismissed, there is no need for the federal

defendants to reply to plaintiff's surreply.  Consequently, the federal defendants' motion is

DENIED as moot.

**H.  Plaintiff's Motion Concerning Electronic Evidence and Docket Access**

The plaintiff filed a Motion Concerning Electronic Evidence and Docket Access on

October 17, 2000, in which she asked the Court for permission to file exhibits on computer

diskettes or on CD-ROM and to allow her to view copies of the docket sheet or documents filed

in this case.  The plaintiff further requested that the Clerk's office notify her by telephone or

email so that she could respond more quickly to motions or orders.  Because all of the plaintiff's

claims are dismissed, her motion concerning future exhibits, motions and orders is rendered

moot.  Therefore, plaintiff's motion is DENIED as moot.

**CONCLUSION**

Upon review of the record herein, the Court concludes that the plaintiff has failed to state any claim against any defendant and furthermore has failed to demonstrate the necessity of sealing the record in this case.  Accordingly, all claims are dismissed and the record is hereby unsealed.

A separate Order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, March 15, 2006.